```
            UNITED STATES DISTRICT COURT
            NORTHERN DISTRICT OF GEORGIA
                  ATLANTA DIVISION


JAMES "TOMMY" GREEN,

      Plaintiff
                              CIVIL ACTION FILE
vs.
                              NO. 1:08-CV-03814-ODE-RGV
CITY OF ATLANTA; TIMOTHY
HARDY in his individual
capacity; and DEBRA CONNER
in her individual capacity,

      Defendants.


                  DEPOSITION OF
                  ALFRED ELDER
                August 24, 2010
                   1:12 p.m.
                City of Atlanta

            68 Mitchell Street, SW

                  Suite 4100

              Atlanta, Georgia



        Marsi Koehl, CCR, CCR-B-2424
```

James "Tommy" Green v. City of Atlanta, et al.   1:08-CV-03814-ODE-RGV
Alfred Elder                                        August 24, 2010

**Page 2**

1                    DESCRIPTION OF EXHIBITS

2      EXH   DESCRIPTION                                      PAGE

3      #1    Charge of Discrimination                         15

4      #2    Response to Charge                               19

5      #3    HR Turnaround Document/Certification Form        23

6      #4    Employee Acceptance of Unclassified Position     24

7      #5    Referred Candidates List                         27

8      #6    Eligible Candidates List                         28

9      #7    E-mail to Mr. Elder from Ms. Porter              33

10           RE: FW: Green410-2007-03089, 7/7/08

11     #8    Classification Specification                     36

12

13

14

15                   INDEX TO EXAMINATIONS

16

17     Examination                                           Page

18     Examination by Ms. Legare                               4

19

20

21

22

23

24

25

**Page 3**

```
 1    APPEARANCES OF COUNSEL

 2    On behalf of the Plaintiff:

 3            CHERYL B. LEGARE

 4            Attorney at Law

 5            BUCKLEY & KLEIN, LLP

 6            1100 Atlantic Center Plaza

 7            1180 West Peachtree Street

 8            Atlanta, Georgia  30309

 9            (404) 781-1100

10            cblegare@buckleyklein.com

11    On behalf of the Defendants:

12            ROBERT N. GODFREY

13            Attorney at Law

14            City of Atlanta

15            4100 Hall Tower

16            68 Mitchell Street, SW

17            Atlanta, Georgia  30303-3520

18            (404) 330-6655

19            rgodfrey@atlantaga.gov

20    Also present:

21            Alicia C. Hickman

22            (Pursuant to OCGA 15-14-37 (a) and (b) a

23    written disclosure statement was submitted by the court

24    reporter to all counsel present at the deposition and

25    is attached hereto.)
```

Page 4

1              (Witness sworn.)

2          MS. LEGARE:  Good morning, Mr. Elder.  Thank

3    for being here today.  And I apologize for the delay

4    this afternoon.  It's been a crazy day.  Anyway, we're

5    here to take your deposition in the case of James

6    "Tommy" Green versus the City of Atlanta, Debra Connor

7    and Timothy Hardy.  And it's currently pending in the

8    Northern District of Georgia.

9              The deposition is being taken pursuant to

10   Notice and agreement of parties for all purposes under

11   the Federal Rules of Civil Procedure.

12             Are we going to waive objections except to

13   form and privilege, Bob?

14         MR. GODFREY:  That's acceptable.

15                       ALFRED ELDER,

16   having been first duly sworn, was examined and

17   testified as follows:

18                       EXAMINATION

19   BY MS. LEGARE:

20     Q.  Mr. Elder, have you been deposed before?

21     A.  Yes.

22     Q.  How often or how many times?

23     A.  Five, six.

24     Q.  Five or six times?  All in employment cases?

25     A.  Yes.

Page 5

1        Q.  So you understand kind of how this works.  We

2   need to give audible answers, so the court reporter

3   can take them down.

4        A.  I do.

5        Q.  If you need a break, just let me know.  I

6   tend to just plow right through and won't even notice.

7            Can you please state your full name for the

8   record.

9        A.  Alfred Elder.

10        Q.  And your address?

11        A.  115 Claridge Drive, Atlanta, Georgia 30342.

12        Q.  And your telephone number?

13        A.  404-330-6640.

14        Q.  Did you do anything to prepare for your

15   deposition today?

16        A.  I reviewed the EEOC case.

17        Q.  The files that you've produced --

18        A.  Yes.

19        Q.  -- to your lawyer?

20            For both charges of discrimination that Tommy

21   Green filed?

22        A.  Just for the first one.

23        Q.  The first one?

24            Did you meet with anyone to go over

25   deposition preparation today --

Page 6

```
 1        A.   No.
 2        Q.   -- other than your attorney?
 3             Mr. Elder, what's your educational
 4   background?
 5        A.   Let me rephrase that last statement.  I did
 6   talk to the HR director in the department.
 7        Q.   Who is the HR director?
 8        A.   That's going to be Linda Goodman.
 9        Q.   Linda Goodman?
10        A.   Yes.
11        Q.   Does she report to you?
12        A.   No.
13        Q.   Do you report to her?
14        A.   No.
15        Q.   When did you meet with Linda -- Ms. Goodman?
16        A.   About 15 minutes ago.
17        Q.   So just for a brief period of time?
18        A.   Yeah.
19        Q.   What did you discuss?
20        A.   I wanted to get the dates correct to make
21   sure that I was consistent with what I remembered of
22   the case of when he applied for the position and when
23   he was in the position, when his predecessor was in
24   the position, et cetera.
25        Q.   Thank you.
```

Page 7

 1          Mr. Elder, what's your educational

 2   background?

 3       A.   I have a college degree from West Georgia

 4   College.

 5       Q.   What is your degree in?

 6       A.   Sociology.  Minor in biology.

 7       Q.   Do you have any education beyond the

 8   bachelor's level?

 9       A.   Other than professional schools, no.

10       Q.   You've taken professional courses?

11       A.   I'm a retired naval officer.  I achieved the

12   rank of commander.  I'm a former naval aviator.  I've

13   taken leadership and management courses.  Two years at

14   flag school.  I taught on the faculty of Morehouse

15   College for four years, ROTC program, leadership

16   management; those types of things.

17       Q.   How long have you been employed with the City

18   of Atlanta?

19       A.   Eighteen years.

20       Q.   What is your current title?

21       A.   Assistant HR commissioner.

22       Q.   When you started, what position did you start

23   in?

24       A.   Affirmative action officer.

25       Q.   How long did you hold that position?

Page 8

 1      A.   Until 2002.

 2      Q.   Were you promoted in 2002 or --

 3      A.   The position evolved into the diversity

 4   management position -- diversity officer position for

 5   the City of Atlanta.

 6      Q.   When you started, I guess would that have

 7   been 1992?

 8      A.   Yes.

 9      Q.   As the affirmative action officer, what were

10   you job duties?

11      A.   My responsibility was to investigate cases

12   that dealt with Title VII, age discrimination, et

13   cetera, and to coordinate resolution through the U.S.

14   Equal Employment Opportunity Commission.

15      Q.   When you say coordinate resolution through

16   the United States EEOC, what do you mean by that?

17      A.   The EEOC -- they sent complaints to the City

18   of Atlanta, just like Mr. Green did.  I would work

19   with the department to determine whether or not the

20   complaints were valid and provide responses to the

21   Equal Employment Opportunity Commission.

22      Q.   What did you do to determine whether the

23   complaints were valid?

24      A.   I would interview parties that are mentioned

25   in the complaint.

Page 9

1      Q.  Would you interview people who were not

2   mentioned in the complaint?

3      A.  It depends.  If the circumstances suggested

4   that they should have been interviewed, yes, I would

5   interview them.

6      Q.  And then you would provide that information

7   to the EEOC?

8      A.  Yes.

9          Excuse me.

10     Q.  Did your duties change at all when your

11  position title changed to diversity manager?

12     A.  The duties were reasonably the same.  We

13  looked at it rather than more from a -- the aggressive

14  pursuit of EEO initiatives as they were initially set

15  up 20 years earlier to more of inclusion, to a more

16  modern perspective of the affirmative action program

17  evolved into diversity management.

18     Q.  Does the City operate under an affirmative

19  action plan?

20     A.  No.  There's no affirmative action plan.

21  There is an equal opportunity and nondiscrimination

22  policy, which ensures that all employees are treated

23  in a fair and equitable manner as provided for by the

24  Equal Employment Opportunity Commission and federal

25  statutes.

**Page 10**

```
 1        Q.   At any point did the City have an affirmative

 2   action plan?

 3        A.   It did.

 4        Q.   When was that?

 5        A.   It had one in 1972 -- 1992 when I came.

 6        Q.   How long was that plan in effect --

 7        A.   I wrote the plan in '93.  I believe it was in

 8   effect for five years.

 9        Q.   So it expired in 1998?

10        A.   1997 or '8.

11        Q.   The City has not operated under a formal

12   affirmative action plan since then?

13        A.   No.

14        Q.   When were you promoted to assistant HR

15   commissioner?

16        A.   March of this year.

17        Q.   Prior to March of this year when you were

18   acting as diversity manager, who did you report to?

19        A.   Benita Ransom.

20        Q.   What is her title?

21        A.   She was the HR commissioner before she

22   retired.

23        Q.   When did she retire?

24        A.   December 2009.

25        Q.   Who do you report to now?
```

Page 11

```
 1        A.   Sherri Dickerson.

 2        Q.   And is she the HR commissioner?

 3        A.   She is.

 4        Q.   Who promoted you?

 5        A.   Sherri Dickerson.

 6        Q.   Did you have to interview for the promotion?

 7        A.   No.

 8        Q.   Do you know if anyone else was considered for

 9   the job?

10        A.   I don't know.

11        Q.   How have your job duties changed now that

12   you're in the new position?

13        A.   I have several units under my oversight,

14   which would include the employee assistance program,

15   business unit, organizational -- employee

16   organizational and development and the insurance unit.

17   It's actually the benefits unit because it encompasses

18   insurance and pension now.

19        Q.   Do you still have any responsibilities for

20   investigating EEO complaints?

21        A.   I still have that responsibility, yes.

22        Q.   What unit does that fall under?

23        A.   It was the office of diversity management.

24        Q.   Is that office dissolved?

25        A.   No.  It's not actually dissolved.  It's just
```

Page 12

1    that we've brought my scope of responsibilities -- I

2    still do those function and I still have an assistant

3    named Nicole Gould, who assists me in that effort.

4         Q.  How many people report to you now?

5         A.  Let me count them up here.  Twenty-five, I

6    think.  Approximately 25.

7         Q.  In March, how many people did you have

8    reporting to you prior to your promotion?

9         A.  Two.

10        Q.  And that was -- Nicole was one of them?

11        A.  Yes.

12        Q.  Who was the other?

13        A.  David Jones.

14        Q.  Does Mr. Jones still report to you?

15        A.  He is currently the intern director for the

16   Department of Public Works.

17        Q.  What was his title previously?

18        A.  He was HR administrator.

19        Q.  Has he been replaced?

20        A.  No.

21        Q.  Can employees make internal complaints of

22   discrimination to your office?

23        A.  They can.

24        Q.  How does that work?

25        A.  They would complete a form.  The form would

**Page 13**

1    indicate the premises in which they would file the

2    complaint.  They would provide sufficient detail that

3    we would have a clear understanding of what the

4    complaint is.  And then we would conduct an

5    investigation into it based on what was provided.

6        Q.  Has Mr. Green ever filed an internal

7    complaint of discrimination that you're aware of?

8        A.  I don't recall him filing an internal

9    complaint.  But then, too, I have to check my files

10   because on average I get somewhere between 80 to

11   150 complaints a year.  And over the course of

12   18 years, that amounts up to probably close to maybe

13   800 complaints, I guess.  So I have to look at my

14   files just to check.  The only file that I reviewed

15   for this deposition was the EEOC file.

16       Q.  Did anyone ask you to look for any potential

17   files containing internal complaints that Mr. Green

18   may have filed?

19       A.  For this deposition, no.

20       Q.  In this litigation at all?

21       A.  No.  They just asked me to provide the files,

22   my records, and I provided my records.  But like I

23   said, I did not look to see if there was an internal

24   complaint.  Actually, my secretary would have provided

25   the file.  So when the request comes in, my assistant

Page 14

```
 1    pulls those files and sends them to the

 2    law department.

 3         Q.  Are files about internal complaints kept in

 4    the same place or a different place than the files for

 5    EEOC?

 6         A.  They are kept in different cabinets.

 7         Q.  So if your assistant wasn't directed to look

 8    in the internal files, would she have done so?

 9         A.  She would have.

10         Q.  If no documents were produced in this

11    litigation related to an internal complaint, does that

12    mean there aren't any?

13         A.  Repeat your question.

14         Q.  If no files have been produced in this

15    litigation related to any internal complaints that my

16    client has said that he filed, does that mean that no

17    documents exist related to the internal complaints

18    that Mr. Green says he filed?

19         A.  If there's an internal complaint, if there's

20    an EEOC complaint, if it was requested, then it was

21    provided.  If it was not provided, that means I don't

22    have any or it was not requested.

23         Q.  But if it was requested and we haven't gotten

24    anything, that means it doesn't exist?

25         A.  I can just tell you:  If it was requested of
```

James "Tommy" Green v. City of Atlanta, et al.   1:08-CV-03814-ODE-RGV
Alfred Elder                                                      August 24, 2010

1    me, it was provided.

2         Q.  You mean if it was requested of you not

3    necessarily if it was requested in this litigation?

4         A.  Right.  If it was requested of me, I provided

5    it.

6         Q.  When did you first become aware, Mr. Elder,

7    that Mr. Green thought that the failure to promote him

8    to the code enforcement supervisor position in 2007 --

9    that he believed he was not promoted because of his

10   race?

11        A.  Certainly when I got to U.S. Equal

12   Opportunity Commission complaint.

13        Q.  You don't recall --

14        A.  I don't recall.

15        Q.  -- any complaints prior to that?

16        A.  I don't.  Not off the top of my head.

17             (Plaintiff's Exhibit-1 was marked for

18   identification.)

19   BY MS. LEGARE:

20        Q.  Have you seen this document before,

21   Mr. Elder?

22        A.  That's the EEOC complaint.

23        Q.  What is the process when an employee files a

24   complaint with the U.S. Equal Employment Opportunity

25   Commission?

Page 16

```
 1      A.   Their process or mine?
 2      Q.   How do you learn about it?
 3      A.   The EEOC will forward it to my office.
 4      Q.   And then once --
 5      A.   Most of the times.  Sometimes they will
 6 forward it directly to the department in which case
 7 the department will forward to my office.
 8      Q.   Do you know whether this went directly to the
 9 department or to you?
10      A.   Not without the cover sheet I wouldn't know.
11      Q.   What is the process once your office receives
12 a charge of discrimination?
13      A.   I forward it to the department and ask the
14 department to assess each of the allegations and then
15 respond to them.
16      Q.   Do they respond in writing to you normally,
17 the department?
18      A.   They do.
19      Q.   Do you maintain those documents?
20      A.   I do most of them.
21      Q.   So if you sent this to the Department of
22 Planning and Community Development and they provided
23 responses to you, should there be documents in the
24 file that were their responses?
25      A.   There would be.
```

Page 17

1      Q.  If they haven't been produced in discovery,

2  do you know why that would be?

3      A.  I produced what's in your discovery.  I mean,

4  I provided files to my law department and then they

5  provided them to you.

6      Q.  But you saved -- or you maintain all of your

7  documents that you collect throughout the process?

8      A.  Whatever -- yes.  I do.

9      Q.  So after you provide this charge to the

10 department and they provided a response to you, then

11 what do you do?

12     A.  Then I review the response.  And then if I

13 have any questions, then I will ask them to respond to

14 my questions and will investigate further.

15         If I'm satisfied with the response that they

16 followed city processes and procedures, that there was

17 no violation of such, then I will provide a response

18 to the U.S. Equal Employment Opportunity Commission.

19     Q.  Do you meet with witnesses?

20     A.  I do meet with witnesses.

21     Q.  Do you recall if you met with witnesses in

22 Mr. Green's -- related to Mr. Green's charge?

23     A.  I met with the bureau director and the

24 assistant bureau director.

25     Q.  Who was the director at the time of his

Page 18

1  charge?

2       A.  Tim Hardaway.

3       Q.  So you met with Mr. Hardy and you --

4       A.  Hardy.  Tim Hardy.

5       Q.  Would that be Debra Connor?

6       A.  Tim Hardy was the director at the time and

7  Debra was the assistant.

8       Q.  You met with Debra also?

9       A.  I did.

10      Q.  Did you meet with Mr. Ronnie Marshall, the

11 person who was selected for the position?

12      A.  No.  Not that I recall.

13      Q.  Did you understand at the time that you got

14 this charge of discrimination that Mr. Green was

15 alleging that Mr. Marshall was preselected for the

16 position?

17      A.  Yes.  Mr. Marshall was the acting supervisor

18 at the time.  So he was in the position before the

19 position was opened up for -- to be filled.

20      Q.  Does being in a position in an acting

21 capacity give you an advantage over the rest of the

22 applicants for the position in your opinion?

23      A.  No.

24      Q.  So you never met with Mr. Marshall to ask him

25 whether he was told the position was his prior to the

**Page 19**

 1   interviews?

 2        A.  No.  I did not.

 3        Q.  You never discussed with Mr. Marshall what

 4   his credentials were relative to the position?

 5        A.  No.

 6        Q.  Did you meet with Mr. Green to interview him?

 7        A.  Interview him --

 8        Q.  About his claims as a part of your

 9   investigation.

10        A.  No.

11        Q.  So you never asked Mr. Green what his

12   credentials were relevant to the position?

13        A.  They provided their credentials when they

14   applied for the job.  So unless they left something

15   out, they were there to be read.  And I read what

16   their credentials were.

17        Q.  Do you know if Mr. Marshall is ICC certified?

18        A.  I don't.

19           (Plaintiff's Exhibit-2 was marked for

20   identification.)

21   BY MS. LEGARE:

22        Q.  Mr. Elder, is it your practice not to meet

23   with the charging parties when they file these charges

24   of discrimination?

25        A.  If I feel there's a need to meet with them, I

Page 20

 1   do.

 2       Q.   But you didn't feel there was a need to meet

 3   with Mr. Green relevant to his charge of

 4   discrimination?

 5       A.   Was he going to provide something that he

 6   hadn't already provided?

 7       Q.   Well, I don't know the answer to that

 8   question.  I mean, you didn't meet with him, so you

 9   don't know; right?

10       A.   Right.

11       Q.   He may have; isn't that right?

12       A.   They have a panel of three or four people

13   that interviewed him.

14       Q.   However, if Mr. Green's allegation is that

15   Mr. Marshall was preselected for the position before

16   the interviews even took place, then the panel would

17   not have mattered; would it?

18       A.   I don't know how I would know that.  That

19   would just be an allegation; wouldn't it?

20       Q.   It might be.

21       A.   Unless he has a crystal ball.

22       Q.   Or unless Mr. Marshall told him that; right?

23       A.   I don't know.  I never met with Mr. Marshall.

24       Q.   That's right.

25            Plaintiff's Exhibit 2, do you recognize this

Page 21

 1   document?

 2        A.   I do.

 3        Q.   What is this document?

 4        A.   This is the submission to the U.S. Equal

 5   Employment Opportunity Commission.

 6        Q.   Was Natasha Sears investigator of

 7   Mr. Green's --

 8        A.   She was.  She was.

 9        Q.   Did you have the same investigator as far as

10   you know through the whole process of this first

11   charge?

12        A.   I have to look at my file.  They frequently

13   change.  I believe there was a letter in the file that

14   said she was being assigned, discharged.  I don't know

15   whether or not she was the initial investigator or

16   not.

17        Q.   Mr. Elder, where did you derive the

18   information -- and I'm looking specifically at the

19   second page, which is the response to the request for

20   additional information -- regarding Mr. Green's

21   qualifications for the job?

22        A.   Which page are you looking at?

23        Q.   The second page.

24        A.   This page here?

25        Q.   Mm-hmm.  That's right.

Page 22

1        A.   From the department.

2        Q.   Did you personally review the applications

3    that were submitted for the promotion?

4        A.   I reviewed the panel's information and I did

5    review the applications.

6        Q.   Did you meet or did you interview the panel

7    interviewers for the open position?

8        A.   I reviewed their submission.

9        Q.   Did you speak with them?

10       A.   No.  I didn't.

11       Q.   Are you aware of whether there are forms that

12   employees fill out when they are promoted from a

13   classified to a nonclassified position?

14       A.   Yes.  What type form are you talking about?

15       Q.   Do employees have to sign something agreeing

16   to accept a nonclassified position?

17       A.   They do.

18       Q.   Why is that?

19       A.   Because employees in the City of Atlanta in

20   19 -- classified 19 and above are at-will employees.

21   And it is to ensure that all employees that are in

22   those positions are aware of their employment status.

23   Employees that are 18 and below are classified

24   employees and they have the right to appeal adverse

25   actions before the civil service board.  Employees 19

Page 23

1    and above don't have that right.

2        Q.   So when they are moving -- when they are

3    giving up those rights, they are doing so voluntarily?

4        A.   That's correct.

5             (Plaintiff's Exhibit-3 was marked for

6    identification.)

7    BY MS. LEGARE:

8        Q.   I've handed you what's marked as Plaintiff's

9    Exhibit 3.  Do you recognize this document?

10       A.   This is a document that promotes Ronnie

11   Marshall.

12       Q.   What's the date on this document?

13       A.   Effective date is February the 27th, '07.

14   The employee signed the date on March the 2nd, '07.

15       Q.   If you look under the comments section of

16   this document, Mr. Elder, it says he's temporarily

17   assigned February 26th.

18       A.   I see it.

19       Q.   What is the effect of this document, if you

20   know?

21       A.   It just says he's temporarily assigned as the

22   code enforcement supervisor.

23       Q.   What's the City's policy on pay for people

24   who are temporarily assigned to what is a promotional

25   position?

Page 24

 1        A.   Do you mean people working out of class?  If
 2    you work out of class 30 days or longer, you get
 3    compensated for it.
 4        Q.   Do you get compensated for the whole time or
 5    only after 30 days?
 6        A.   After 30 days.
 7        Q.   So the first 30 days you're paid at whatever
 8    your regular rate of pay was?
 9        A.   Correct.
10        Q.   When an employee is temporarily assigned to a
11    promotional position but has not been personally
12    selected for that position, are they required to sign
13    the employee acceptance of unclassified position form?
14        A.   No.  Only when you become permanent.  That's
15    my understanding.
16             (Plaintiff's Exhibit-4 was marked for
17    identification.)
18    BY MS. LEGARE:
19        Q.   Have you seen this document before --
20        A.   No.
21        Q.   -- Mr. Elder?
22        A.   I have not.
23        Q.   Have you seen this form before?
24        A.   Yes.
25        Q.   What is the form?

Page 25

1        A.   This is a form that says you accept a
2   nonclassified position.
3        Q.   Looking at the form of what your knowledge is
4   of what city policies are, when did Mr. Marshall
5   become permanent in the code enforcement supervisor
6   position?
7             MR. GODFREY:  Object to the form.
8        A.   It says he is accepting a position in the
9   nonclassified service effective February 27, '07.
10  BY MS. LEGARE:
11       Q.   He signed it when?
12       A.   March the 2nd, '07.
13       Q.   Do you recall from your information of
14  Mr. Green's charge of discrimination when the
15  interviews were for the code enforcement supervisor
16  position?
17       A.   The interviews predate the form.
18       Q.   The interviews predate the form?
19       A.   (Witness nods head affirmatively.)
20       Q.   What are the dates of the --
21       A.   I'm sorry.  The interviews -- I'm sorry.  The
22  interviews are on March the 12th, '07.  The form says
23  February 27th, '07.
24       Q.   Does the City have a policy on creating lists
25  of eligible employees for a promotion?

Page 26

```
 1       A.  If it's in the classified service, the City
 2  will accept the applications and create a register for
 3  the register to the department.  If it's a
 4  nonclassified position, there's no requirement to have
 5  a register.  However, the person that's selected for
 6  the position must be approved by the Department of
 7  Human Resources and certified that they are qualified
 8  to assume that position.
 9       Q.  When it's a promotional position outside of
10  the classified system, is there a form from human
11  resources that's not necessarily a register?
12       A.  No.  It's not a register.
13       Q.  It just shows who's qualified and who isn't
14  qualified for the job?
15       A.  Which form are you talking about?
16       Q.  I'll show you one.  Let's see if I can
17  find -- while I'm looking for it, let me ask you
18  another question.
19            Is there any policy on whether or not
20  promotional opportunities that are open positions
21  within the department have to be posted only
22  internally?  Who decide whether you're going open it
23  up to outside candidates?
24       A.  The department head.
25       Q.  Do you know how those decisions are made?
```

Page 27

1        A.   The department head may just consider that he

2   has sufficient talent inside the organization to do

3   that.

4        Q.   To post it only internally?

5        A.   Yes.

6        Q.   For classified positions, if there's a

7   register, are the departments required to work from

8   that register for any specific period of time?

9        A.   No.

10       Q.   No?

11       A.   Because they may also hire people that are

12  not on that register if they are qualified to do the

13  job and they are approved by the Department of Human

14  Resources as being certified to be able to perform

15  that job.

16       Q.   That's true for classified positions?

17       A.   Nonclassified.

18       Q.   I'm talking about classified.

19       A.   Okay.

20       Q.   Are they required to work from a register for

21  any period of time?

22       A.   There's a specified period of time that the

23  register is active and it may be extended upon

24  approval of the Department of Human Resources.

25            (Plaintiff's Exhibit-5 was marked for

Page 28

 1    identification.)

 2    BY MS. LEGARE:

 3        Q.  Mr. Elder, have you seen Plaintiff's

 4    Exhibit 5 before?

 5        A.  I'm sorry?

 6        Q.  Are you familiar with this document?

 7        A.  I am.

 8        Q.  What is it?

 9        A.  It's just a referral list.

10        Q.  How does that work?  If an unclassified

11    position is posted, what is human resources'

12    responsibilities with respect to the applicants?

13        A.  If an unclassified position is posted, then

14    the Department of Human Resources is responsible for

15    ensuring that the people selected for that position

16    are actually qualified to be able to perform those

17    functions.

18        Q.  So if a list like this came over, all human

19    resources is saying is they are minimally qualified

20    for the position?

21        A.  If a list comes from HR for an unclassified

22    position, it just says they meet the minimal

23    qualifications to perform the job.

24            (Plaintiff's Exhibit-6 was marked for

25    identification.)

 1   BY MS. LEGARE:

 2       Q.  Mr. Elder, do you recognize Plaintiff's

 3   Exhibit 6?

 4       A.  Do I recognize it?

 5       Q.  Yes.

 6       A.  From where you would you like me to

 7   recognize --

 8       Q.  Have you seen this before?

 9       A.  No, not that I recall.  I mean, I may have

10   seen it.  I just don't recall at this time this

11   specific one-page document.

12       Q.  It says on here that this is a default list.

13   Do you know what that means?

14       A.  Well, actually, these lists are handled and

15   addressed by a second HR assistant commissioner.  I

16   don't normally deal with these lists.  I am familiar

17   with them, but -- I'm real familiar with the referral

18   list, but the default list, I don't know that much

19   about.

20       Q.  Who was the -- you said second assistant

21   commissioner?

22       A.  It was a second assistant commissioner.

23       Q.  Who was it at the time of this list in 2007;

24   do you know?

25       A.  It -- it could have been either Mary Ann

Page 30

1    Johnson or Michael Loeser.

2        Q.   Michael Loeser --

3        A.   L-O-E-S-E-R.

4        Q.   Do you know what the difference is between a

5    referral list and a default list?

6        A.   Not right off the top of my head, no.

7        Q.   Who's the person responsible for these things

8    right now?

9        A.   Jerry Solomon.  And I believe Mary Ann

10   Johnson would have had the Department of Planning, so

11   she would have been the assistant rather than Mike.

12       Q.   At the time in 2007?

13       A.   Yes.

14       Q.   Is she still employed with the City of

15   Atlanta?

16       A.   She retired in December.

17       Q.   Mr. Elder, did you investigate the --

18   Mr. Green's complaints of race discrimination related

19   to the second code enforcement supervisor position

20   that was filled almost immediately -- or almost

21   immediately subsequent to Ronnie Marshall's promotion?

22       A.   Back it up, please.

23       Q.   Approximately two months, maybe three, after

24   Mr. Marshall was promoted, Sandra Hines was promoted.

25   Are you aware of that?

Page 31

1        A.   I don't recall.  I was under the impression

2    that Green took over after Marshall left.

3        Q.   Did you investigate Mr. Green's claims of

4    discrimination and retaliation related to Ethel

5    Brothers' promotion to code enforcement supervisor in

6    2009?

7        A.   I responded to the EEOC on that one.

8        Q.   Did you meet with Mr. Green with respect to

9    that charge of discrimination?

10       A.   No.  I looked at the credentials and his

11   credentials were -- were not in the same ballpark and

12   Ms. Brothers.

13       Q.   Did you give Ms. Brothers credit in that

14   process for all of the time of her self-employment?

15       A.   I think she had credit for working as the

16   zoning chief for DeKalb County from 1992 to 2001, I

17   believe it was; and then the director of zoning and

18   planning in Bryan County for another two years.  I

19   think that's what kind of gave her the credit, the

20   edge.

21       Q.   Do you know if anyone called references with

22   respect to this position?

23       A.   I do not.

24       Q.   Do you know whether Ms. Brothers knew

25   Ms. Connor prior to applying for the position?

**Page 32**

1        A.  I do not know.

2        Q.  Did you know when you were investigating

3   Mr. Green's charge of discrimination that Mr. Connor

4   had been served with the complaint in this lawsuit

5   within a few days of her interviewing him for the

6   position?

7        A.  I don't recall.

8        Q.  Did you talk to Ms. Connor about Mr. Green's

9   second charge of discrimination?

10       A.  Yes.  I would have talked to her.

11       Q.  Did you interview anyone else as a part of

12  your investigation into his second charge of

13  discrimination?

14       A.  I don't recall.  But the application between

15  the two, there was a significant difference.  So I did

16  not readily see where there was discrimination.

17       Q.  Were you aware that the EEOC found that there

18  was cause to believe that Title VII had been violated

19  by the City with respect to the Ronnie Marshall

20  promotion?

21       A.  Yes.

22       Q.  When the EEOC attempts to conciliate a charge

23  of discrimination, is it you that they work with?

24       A.  It is.

25       Q.  Conciliation failed; correct?

Page 33

```
 1        A.   Correct.
 2             (Plaintiff's Exhibit-7 was marked for
 3   identification.)
 4   BY MS. LEGARE:
 5        Q.   You've been handed what's been marked as
 6   Plaintiff's Exhibit 7.  Take a minute to look through
 7   that document.
 8             Have you seen this document before,
 9   Mr. Elder?
10        A.   No.
11        Q.   What is this document?
12        A.   It is a letter from the Equal Employment
13   Opportunity Commission stating our position on the
14   case.
15        Q.   Is Nicole Porter now Nicole Gould?
16        A.   She is.
17        Q.   If you turn to the fourth page of this
18   document, in the first paragraph the EEOC has written
19   that Mr. Marshall was rated higher than Mr. Green by
20   some of the committee members because he was already
21   serving in the position as acting role.
22             Were you aware of that, Mr. Elder?
23        A.   Yes.
24        Q.   Were you aware as this document states that
25   Mr. Green actually had more experience than
```

Page 34

```
 1    Mr. Marshall for this position?
 2         A.   No.  He did not have more experience.
 3         Q.   Why do you say he didn't have more
 4    experience, Mr. Elder?
 5         A.   Because most of Mr. Green's experience came
 6    from working with his family.  I doubt it seriously
 7    his father and mother would say he wasn't qualified
 8    for the position.
 9         Q.   So you discounted Mr. Green's 20-something
10    years of self-employment as a contractor?
11         A.   I did not think his mother and father would
12    give me a truthful answer in terms of whether or not
13    he was more qualified or not.
14         Q.   But when you were laying out for the EEOC why
15    Ms. Brothers was more qualified than Mr. Green, you
16    gave her ample credit for multiple years of
17    self-employment; did you not?
18         A.   Yes.  Because they were not biased
19    references.
20         Q.   Her self-employment was not a biased
21    reference?
22         A.   I'm sorry.  I gave you approximately 13 years
23    with DeKalb County and Bryan County --
24         Q.   But you also --
25         A.   -- as the zoning chief and the director of
```

Page 35

1   planning.

2          Q.  But you also gave her credit for --

3          A.  Did I didn't give her credit for anything.

4   But it's reasonable to conclude that if you are the

5   zoning chief of a major county, then you are going to

6   have considerably more experience than somebody --

7   you're going to get credit for more experience that

8   someone working for their mother and father in a

9   family business.

10         Q.  Mr. Elder, when you were looking at

11   Mr. Green's experience, did you consider the

12   significant period of time that he worked for the City

13   as construction and maintenance mechanic?

14         A.  I've already given you my answer.  My answer

15   is that I thought that Ms. Brothers had verifiable

16   experience that was superior to that of Mr. Green.

17         Q.  I'm now talking about Mr. Marshall.

18         A.  Mr. Marshall -- what about him?

19         Q.  You say that Mr. Green only had eight years

20   of experience.  However, he had been with the City for

21   significantly longer than eight years; had he not?

22         A.  He was in another department doing something

23   else.

24         Q.  But the something else he was doing was not

25   completely unrelated to the position that he held; was

Page 36

1    it?

2         A.  I couldn't say.

3         Q.  Did you look at the job description for the

4    construction and maintenance mechanic when you were

5    investigating Mr. Green's charge of discrimination?

6         A.  I would have, yes.

7              (Plaintiff's Exhibit-8 was marked for

8    identification.)

9    BY MS. LEGARE:

10        Q.  Mr. Elder, have you seen Plaintiff's

11   Exhibit 8 before?

12        A.  Yes.

13        Q.  What is Plaintiff's Exhibit 8?

14        A.  It is the classification specification for

15   the construction maintenance mechanic.

16        Q.  I believe that when you wrote to the EEOC,

17   you said that Mr. Green was basically a handyman?

18        A.  Pretty much, yeah.

19        Q.  Do handymen performed skill worked in

20   building, remodeling and repairing of structures?

21        A.  If you'll notice, the second paragraph says

22   that these duties are not to be as construed as

23   exclusive or all inclusive.  It doesn't mean he did

24   them all.

25        Q.  It doesn't mean he didn't do them all either.

James "Tommy" Green v. City of Atlanta, et al.   1:08-CV-03814-ODE-RGV
Alfred Elder                                        August 24, 2010

Page 37

1    Did you talk to Mr. Green about what he did?

2         A.  No.  The panel did.  The interview panel

3    talked to him.

4         Q.  You never interviewed the interview panel

5    members; correct?

6         A.  I read their documentation.

7         Q.  Did you actually speak with any of them?

8         A.  I was satisfied when I talked to the bureau

9    director and the assistant bureau director.  And they

10   were part of that panel.

11        Q.  Would it surprise you to know that

12   Mr. Newman, Raul Newman, one of the panel members,

13   told Mr. Green that he thought Mr. Green had been

14   selected for the position?

15        A.  I did talk to Mr. Newman and he didn't tell

16   me that.

17        Q.  At the time that you were investigating

18   Mr. Green's charge of discrimination, would you have

19   come to a different conclusion had you known that

20   Mr. Marshall permanently accepted the position on

21   March 2nd, 10 days before the interviews for the

22   position?

23             MR. GODFREY:  Object to the form.

24             THE WTINESS:  I'm sorry?

25             MR. GODFREY:  You can go ahead and answer.

Page 38

 1   BY MS. LEGARE:

 2        Q.  Mr. Marshall accepted the unclassified

 3   position on March 2nd.  The interviews were conducted

 4   on March 12th.  Would your conclusion have been

 5   different regarding Mr. Green's charge of

 6   discrimination had you known that at the time you were

 7   investigating his claims?

 8        A.  You're asking me "what ifs" right now?

 9        Q.  I mean, we have the documents right here.

10        A.  But I did know.

11        Q.  Did you request these documents from the

12   department when you were investigating the claims?

13        A.  I requested the interview sheets from all of

14   the panel members.  It was a diverse panel.  I didn't

15   see any reason from the documentation that they

16   submitted to believe that what they considered was

17   inappropriate.  And I based my decision on that.

18        Q.  But it would have been inappropriate to offer

19   Mr. Marshall the position before the panel interviews;

20   wouldn't it have been?

21        A.  It would have been inappropriate, yes.

22            MS. LEGARE:  I'm going to look at this and I

23   may be done.  Thank you.

24            (Deposition concluded at 2:11 p.m.)

25            (Signature reserved.)

**Page 39**

1                          CERTIFICATE

2

3    STATE OF GEORGIA:

4    COUNTY OF FULTON:

5

6              I hereby certify that the foregoing

7    transcript was taken down, as stated in the caption,

8    and the colloquies, questions, and answers were reduced

9    to typewriting under my direction; that the transcript

10   is a true and correct record of the evidence given upon

11   said proceeding.

12             I further certify that I am not a relative or

13   employee or attorney of any party, nor am I financially

14   interested in the outcome of this action.

15             This the 3rd day of September, 2010.

16

17

18

19   _____

20             Marsi Koehl, CCR, CCR-B-2424

21

22

23

24

25

Page 40

1            UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF GEORGIA
2                  ATLANTA DIVISION
3

  JAMES "TOMMY" GREEN,

4

      Plaintiff

5                              CIVIL ACTION FILE

  vs.

6                              NO. 1:08-CV-03814-ODE-RGV

7 CITY OF ATLANTA; TIMOTHY
  HARDY in his individual
8 capacity; and DEBRA CONNER
  in her individual capacity,

9

      Defendants.

10
11
12        The preceding deposition taken in the matter,
13 on the date, and at the time and place set out on the
14 title page hereof.
15
16        It was requested that the deposition be taken
17 by the reporter and that same be reduced to
18 typewritten form.
19
20        It was agreed by and between counsel and the
21 parties that the Deponent will read and sign the
22 transcript of said deposition.
23
24
25

James "Tommy" Green v. City of Atlanta, et al.   1:08-CV-03814-ODE-RGV
Alfred Elder                                      August 24, 2010

```
 1                        CERTIFICATE
 2    STATE OF
      COUNTY/CITY OF
 3
 4
              Before me, this day, personally appeared,
 5    ALFRED ELDER, who, being duly sworn, states that the
      foregoing transcript of his deposition, taken in the
 6    matter, on the date, and at the time and place set out
      on the title page hereof, constitutes a true and
 7    accurate transcript of said deposition.
 8
 9                        ALFRED  ELDER
10
11
12
13    SUBSCRIBED and SWORN to before me this
14             day of              , 2010 in the
15    jurisdiction aforesaid.
16
17
18    My Commission Expires      Notary Public
19
20
21
22
23
24
25
```

James "Tommy" Green v. City of Atlanta, et al.   1:08-CV-03814-ODE-RGV
Alfred Elder                                          August 24, 2010

Page 42

```
 1   DEPOSITION ERRATA SHEET

 2   Deponent:  ALFRED ELDER

 3   Deposition Date:  August 24, 2010

 4

 5   To Reporter:

 6   I have read the entire transcript of my deposition

 7   taken in the captioned matter or the same has been read

 8   to me.  I request that the following changes be entered

 9   upon the record for the reasons indicated.  I have

10   signed my name to the Errata Sheet and appropriate

11   Certificate and authorize you to attach both to the

12   original transcript.

13

14   Page No.        Line No.

15   Change to:

16   Reason for Change:

17

18   Page No.        Line No.

19   Change to:

20   Reason for Change:

21

22   Page No.        Line No.

23   Change to:

24   Reason for Change:

25
```

**Page 43**

```
 1                 Deposition of ALFRED ELDER

 2

 3    Page No.        Line No.

 4    Change to:

 5    Reason for Change:

 6

 7    Page No.        Line No.

 8    Change to:

 9    Reason for Change:

10

11    Page No.        Line No.

12    Change to:

13    Reason for Change:

14

15    Page No.        Line No.

16    Change to:

17    Reason for Change:

18

19    Page No.        Line No.

20    Change to:

21    Reason for Change:

22

23

24    Signature:                        Date:

25                    ALFRED ELDER
```

James "Tommy" Green v. City of Atlanta, et al.   1:08-CV-03814-ODE-RGV
Alfred Elder

August 24, 2010
Page 44

**A**

**able**
27:14 28:16
**accept**
22:16 25:1 26:2
**acceptable**
4:14
**acceptance**
2:6 24:13
**accepted**
37:20 38:2
**accepting**
25:8
**accurate**
41:7
**achieved**
7:11
**acting**
10:18 18:17,20
  33:21
**action**
1:5 7:24 8:9 9:16
  9:19,20 10:2,12
  39:14 40:5
**actions**
22:25
**active**
27:23
**additional**
21:20
**address**
5:10
**addressed**
29:15
**administrator**
12:18
**advantage**
18:21
**adverse**
22:24
**affirmative**
7:24 8:9 9:16,18,20
  10:1,12
**affirmatively**

25:19
**aforesaid**
41:15
**afternoon**
4:4
**age**
8:12
**aggressive**
9:13
**ago**
6:16
**agreed**
40:20
**agreeing**
22:15
**agreement**
4:10
**ahead**
37:25
**Alfred**
1:12 4:15 5:9 41:5
  41:9 42:2 43:1,25
**Alicia**
3:21
**allegation**
20:14,19
**allegations**
16:14
**alleging**
18:15
**amounts**
13:12
**ample**
34:16
**Ann**
29:25 30:9
**answer**
20:7 34:12 35:14
  35:14 37:25
**answers**
5:2 39:8
**Anyway**
4:4
**apologize**

4:3
**appeal**
22:24
**APPEARANCES**
3:1
**appeared**
41:4
**applicants**
18:22 28:12
**application**
32:14
**applications**
22:2,5 26:2
**applied**
6:22 19:14
**applying**
31:25
**appropriate**
42:10
**approval**
27:24
**approved**
26:6 27:13
**approximately**
12:6 30:23 34:22
**asked**
13:21 19:11
**asking**
38:8
**assess**
16:14
**assigned**
21:14 23:17,21,24
  24:10
**assistance**
11:14
**assistant**
7:21 10:14 12:2
  13:25 14:7 17:24
  18:7 29:15,20,22
  30:11 37:9
**assists**
12:3
**assume**

26:8
**Atlanta**
1:2,7,15,21 3:8,14
  3:17 4:6 5:11
  7:18 8:5,18 22:19
  30:15 40:2,7
**Atlantic**
3:6
**attach**
42:11
**attached**
3:25
**attempts**
32:22
**attorney**
3:4,13 6:2 39:13
**at-will**
22:20
**audible**
5:2
**August**
1:13 42:3
**authorize**
42:11
**average**
13:10
**aviator**
7:12
**aware**
13:7 15:6 22:11,22
  30:25 32:17 33:22
  33:24

**B**

**b**
3:3,22
**bachelor's**
7:8
**Back**
30:22
**background**
6:4 7:2
**ball**
20:21

**ballpark**
31:11
**based**
13:5 38:17
**basically**
36:17
**behalf**
3:2,11
**believe**
10:7 21:13 30:9
  31:17 32:18 36:16
  38:16
**believed**
15:9
**benefits**
11:17
**Benita**
10:19
**beyond**
7:7
**biased**
34:18,20
**biology**
7:6
**board**
22:25
**Bob**
4:13
**break**
5:5
**brief**
6:17
**Brothers**
31:5,12,13,24
  34:15 35:15
**brought**
12:1
**Bryan**
31:18 34:23
**BUCKLEY**
3:5
**building**
36:20
**bureau**

17:23,24 37:8,9
**business**
11:15 35:9

**C**

**C**
3:21
**cabinets**
14:6
**called**
31:21
**candidates**
2:7,8 26:23
**capacity**
1:8,8 18:21 40:8,8
**caption**
39:7
**captioned**
42:7
**case**
4:5 5:16 6:22 16:6
   33:14
**cases**
4:24 8:11
**cause**
32:18
**cblegare@buckl...**
3:10
**CCR**
1:25 39:20
**CCR-B-2424**
1:25 39:20
**Center**
3:6
**Certainly**
15:11
**Certificate**
39:1 41:1 42:11
**certified**
19:17 26:7 27:14
**certify**
39:6,12
**cetera**
6:24 8:13

**change**
9:10 21:13 42:15
   42:16,19,20,23,24
   43:4,5,8,9,12,13
   43:16,17,20,21
**changed**
9:11 11:11
**changes**
42:8
**charge**
2:3,4 16:12 17:9,22
   18:1,14 20:3
   21:11 25:14 31:9
   32:3,9,12,22 36:5
   37:18 38:5
**charges**
5:20 19:23
**charging**
19:23
**check**
13:9,14
**CHERYL**
3:3
**chief**
31:16 34:25 35:5
**circumstances**
9:3
**city**
1:7,15 3:14 4:6
   7:17 8:5,17 9:18
   10:1,11 17:16
   22:19 25:4,24
   26:1 30:14 32:19
   35:12,20 40:7
**City's**
23:23
**civil**
1:5 4:11 22:25 40:5
**claims**
19:8 31:3 38:7,12
**Claridge**
5:11
**class**
24:1,2

**classification**
2:11 36:14
**classified**
22:13,20,23 26:1
   26:10 27:6,16,18
**clear**
13:3
**client**
14:16
**close**
13:12
**code**
15:8 23:22 25:5,15
   30:19 31:5
**collect**
17:7
**college**
7:3,4,15
**colloquies**
39:8
**come**
37:19
**comes**
13:25 28:21
**commander**
7:12
**comments**
23:15
**Commission**
8:14,21 9:24 15:12
   15:25 17:18 21:5
   33:13 41:18
**commissioner**
7:21 10:15,21 11:2
   29:15,21,22
**committee**
33:20
**Community**
16:22
**compensated**
24:3,4
**complaint**
8:25 9:2 13:2,4,7,9
   13:24 14:11,19,20

15:12,22,24 32:4
**complaints**
8:17,20,23 11:20
   12:21 13:11,13,17
   14:3,15,17 15:15
   30:18
**complete**
12:25
**completely**
35:25
**conciliate**
32:22
**Conciliation**
32:25
**conclude**
35:4
**concluded**
38:24
**conclusion**
37:19 38:4
**conduct**
13:4
**conducted**
38:3
**CONNER**
1:8 40:8
**Connor**
4:6 18:5 31:25 32:3
   32:8
**consider**
27:1 35:11
**considerably**
35:6
**considered**
11:8 38:16
**consistent**
6:21
**constitutes**
41:6
**construction**
35:13 36:4,15
**construed**
36:22
**containing**

13:17
**contractor**
34:10
**coordinate**
8:13,15
**correct**
6:20 23:4 24:9
   32:25 33:1 37:5
   39:10
**counsel**
3:1,24 40:20
**count**
12:5
**county**
31:16,18 34:23,23
   35:5 39:4
**COUNTY/CITY**
41:2
**course**
13:11
**courses**
7:10,13
**court**
1:1 3:23 5:2 40:1
**cover**
16:10
**crazy**
4:4
**create**
26:2
**creating**
25:24
**credentials**
19:4,12,13,16
   31:10,11
**credit**
31:13,15,19 34:16
   35:2,3,7
**crystal**
20:21
**current**
7:20
**currently**
4:7 12:15

James "Tommy" Green v. City of Atlanta, et al.    1:08-CV-03814-ODE-RGV
Alfred Elder
August 24, 2010
Page 46

**D**

**date**
23:12,13,14 40:13
41:6 42:3 43:24
**dates**
6:20 25:20
**David**
12:13
**day**
4:4 39:15 41:4,14
**days**
24:2,5,6,7 32:5
37:21
**deal**
29:16
**dealt**
8:12
**Debra**
1:8 4:6 18:5,7,8
40:8
**December**
10:24 30:16
**decide**
26:22
**decision**
38:17
**decisions**
26:25
**default**
29:12,18 30:5
**Defendants**
1:9 3:11 40:9
**degree**
7:3,5
**DeKalb**
31:16 34:23
**delay**
4:3
**department**
6:6 8:19 12:16 14:2
16:6,7,9,13,14,17
16:21 17:4,10
22:1 26:3,6,21,24
27:1,13,24 28:14

30:10 35:22 38:12
**departments**
27:7
**depends**
9:3
**Deponent**
40:21 42:2
**deposed**
4:20
**deposition**
1:11 3:24 4:5,9
5:15,25 13:15,19
38:24 40:12,16,22
41:5,7 42:1,3,6
43:1
**derive**
21:17
**description**
2:1,2 36:3
**detail**
13:2
**determine**
8:19,22
**development**
11:16 16:22
**Dickerson**
11:1,5
**difference**
30:4 32:15
**different**
14:4,6 37:19 38:5
**directed**
14:7
**direction**
39:9
**directly**
16:6,8
**director**
6:6,7 12:15 17:23
17:24,25 18:6
31:17 34:25 37:9
37:9
**discharged**
21:14

**disclosure**
3:23
**discounted**
34:9
**discovery**
17:1,3
**discrimination**
2:3 5:20 8:12 12:22
13:7 16:12 18:14
19:24 20:4 25:14
30:18 31:4,9 32:3
32:9,13,16,23
36:5 37:18 38:6
**discuss**
6:19
**discussed**
19:3
**dissolved**
11:24,25
**District**
1:1,1 4:8 40:1,1
**diverse**
38:14
**diversity**
8:3,4 9:11,17 10:18
11:23
**DIVISION**
1:2 40:2
**document**
15:20 21:1,3 23:9
23:10,12,16,19
24:19 28:6 29:11
33:7,8,11,18,24
**documentation**
37:6 38:15
**documents**
14:10,17 16:19,23
17:7 38:9,11
**Document/Certif...**
2:5
**doing**
23:3 35:22,24
**doubt**
34:6

**Drive**
5:11
**duly**
4:16 41:5
**duties**
8:10 9:10,12 11:11
36:22

**E**

**earlier**
9:15
**edge**
31:20
**education**
7:7
**educational**
6:3 7:1
**EEO**
9:14 11:20
**EEOC**
5:16 8:16,17 9:7
13:15 14:5,20
15:22 16:3 31:7
32:17,22 33:18
34:14 36:16
**effect**
10:6,8 23:19
**effective**
23:13 25:9
**effort**
12:3
**eight**
35:19,21
**Eighteen**
7:19
**either**
29:25 36:25
**Elder**
1:12 2:9 4:2,15,20
5:9 6:3 7:1 15:6
15:21 19:22 21:17
23:16 24:21 28:3
29:2 30:17 33:9
33:22 34:4 35:10

36:10 41:5,9 42:2
43:1,25
**eligible**
2:8 25:25
**employed**
7:17 30:14
**employee**
2:6 11:14,15 15:23
23:14 24:10,13
39:13
**employees**
9:22 12:21 22:12
22:15,19,20,21,23
22:24,25 25:25
**employment**
4:24 8:14,21 9:24
15:24 17:18 21:5
22:22 33:12
**encompasses**
11:17
**enforcement**
15:8 23:22 25:5,15
30:19 31:5
**ensure**
22:21
**ensures**
9:22
**ensuring**
28:15
**entered**
42:8
**entire**
42:6
**equal**
8:14,21 9:21,24
15:11,24 17:18
21:4 33:12
**equitable**
9:23
**Errata**
42:1,10
**et**
6:24 8:12
**Ethel**

31:4
**evidence**
39:10
**evolved**
8:3 9:17
**Examination**
2:17,18 4:18
**EXAMINATIONS**
2:15
**examined**
4:16
**exclusive**
36:23
**Excuse**
9:9
**EXH**
2:2
**Exhibit**
20:25 23:9 28:4
  29:3 33:6 36:11
  36:13
**EXHIBITS**
2:1
**Exhibit-1**
15:17
**Exhibit-2**
19:19
**Exhibit-3**
23:5
**Exhibit-4**
24:16
**Exhibit-5**
27:25
**Exhibit-6**
28:24
**Exhibit-7**
33:2
**Exhibit-8**
36:7
**exist**
14:17,24
**experience**
33:25 34:2,4,5 35:6
  35:7,11,16,20

**expired**
10:9
**Expires**
41:18
**extended**
27:23
**E-mail**
2:9

─────── **F** ───────

**faculty**
7:14
**failed**
32:25
**failure**
15:7
**fair**
9:23
**fall**
11:22
**familiar**
28:6 29:16,17
**family**
34:6 35:9
**far**
21:9
**father**
34:7,11 35:8
**February**
23:13,17 25:9,23
**federal**
4:11 9:24
**feel**
19:25 20:2
**file**
1:5 13:1,14,15,25
  16:24 19:23 21:12
  21:13 40:5
**filed**
5:21 13:6,18 14:16
  14:18
**files**
5:17 13:9,14,17,21
  14:1,3,4,8,14

15:23 17:4
**filing**
13:8
**fill**
22:12
**filled**
18:19 30:20
**financially**
39:13
**find**
26:17
**first**
4:16 5:22,23 15:6
  21:10 24:7 33:18
**five**
4:23,24 10:8
**flag**
7:14
**followed**
17:16
**following**
42:8
**follows**
4:17
**foregoing**
39:6 41:5
**form**
2:5 4:13 12:25,25
  22:14 24:13,23,25
  25:1,3,7,17,18,22
  26:10,15 37:23
  40:18
**formal**
10:11
**former**
7:12
**forms**
22:11
**forward**
16:3,6,7,13
**found**
32:17
**four**
7:15 20:12

**fourth**
33:17
**frequently**
21:12
**full**
5:7
**FULTON**
39:4
**function**
12:2
**functions**
28:17
**further**
17:14 39:12
**FW**
2:10

─────── **G** ───────

**Georgia**
1:1,21 3:8,17 4:8
  5:11 7:3 39:3
  40:1
**give**
5:2 18:21 31:13
  34:12 35:3
**given**
35:14 39:10
**giving**
23:3
**go**
5:24 37:25
**GODFREY**
3:12 4:14 25:7
  37:23,25
**going**
4:12 6:8 20:5 26:22
  35:5,7 38:22
**Good**
4:2
**Goodman**
6:8,9,15
**gotten**
14:23
**Gould**

12:3 33:15
**Green**
1:3 4:6 5:21 8:18
  13:6,17 14:18
  15:7 18:14 19:6
  19:11 20:3 31:2,8
  33:19,25 34:15
  35:16,19 36:17
  37:1,13,13 40:3
**Green's**
17:22,22 20:14
  21:7,20 25:14
  30:18 31:3 32:3,8
  34:5,9 35:11 36:5
  37:18 38:5
**Green410-2007-0...**
2:10
**guess**
8:6 13:13

─────── **H** ───────

**Hall**
3:15
**handed**
23:8 33:5
**handled**
29:14
**handyman**
36:17
**handymen**
36:19
**Hardaway**
18:2
**Hardy**
1:7 4:7 18:3,4,4,6
  40:7
**head**
15:16 25:19 26:24
  27:1 30:6
**held**
35:25
**hereof**
40:14 41:6
**hereto**

3:25
**Hickman**
3:21
**higher**
33:19
**Hines**
30:24
**hire**
27:11
**hold**
7:25
**HR**
2:5 6:6,7 7:21
   10:14,21 11:2
   12:18 28:21 29:15
**human**
26:7,10 27:13,24
   28:11,14,18

**I**

**ICC**
19:17
**identification**
15:18 19:20 23:6
   24:17 28:1,25
   33:3 36:8
**ifs**
38:8
**immediately**
30:20,21
**impression**
31:1
**inappropriate**
38:17,18,21
**include**
11:14
**inclusion**
9:15
**inclusive**
36:23
**INDEX**
2:15
**indicate**
13:1

**indicated**
42:9
**individual**
1:7,8 40:7,8
**information**
9:6 21:18,20 22:4
   25:13
**initial**
21:15
**initially**
9:14
**initiatives**
9:14
**inside**
27:2
**insurance**
11:16,18
**interested**
39:14
**intern**
12:15
**internal**
12:21 13:6,8,17,23
   14:3,8,11,15,17
   14:19
**internally**
26:22 27:4
**interview**
8:24 9:1,5 11:6
   19:6,7 22:6 32:11
   37:2,4 38:13
**interviewed**
9:4 20:13 37:4
**interviewers**
22:7
**interviewing**
32:5
**interviews**
19:1 20:16 25:15
   25:17,18,21,22
   37:21 38:3,19
**investigate**
8:11 17:14 30:17
   31:3

**investigating**
11:20 32:2 36:5
   37:17 38:7,12
**investigation**
13:5 19:9 32:12
**investigator**
21:6,9,15

**J**

**James**
1:3 4:5 40:3
**Jerry**
30:9
**job**
8:10 11:9,11 19:14
   21:21 26:14 27:13
   27:15 28:23 36:3
**Johnson**
30:1,10
**Jones**
12:13,14
**jurisdiction**
41:15

**K**

**kept**
14:3,6
**kind**
5:1 31:19
**KLEIN**
3:5
**knew**
31:24
**know**
5:5 11:8,10 16:8,10
   17:2 19:17 20:7,9
   20:18,18,23 21:10
   21:14 23:20 26:25
   29:13,18,24 30:4
   31:21,24 32:1,2
   37:11 38:10
**knowledge**
25:3
**known**
37:19 38:6

**Koehl**
1:25 39:20

**L**

**law**
3:4,13 14:2 17:4
**lawsuit**
32:4
**lawyer**
5:19
**laying**
34:14
**leadership**
7:13,15
**learn**
16:2
**left**
19:14 31:2
**Legare**
2:18 3:3 4:2,19
   15:19 19:21 23:7
   24:18 25:10 28:2
   29:1 33:4 36:9
   38:1,22
**letter**
21:13 33:12
**Let's**
26:16
**level**
7:8
**Linda**
6:8,9,15
**Line**
42:14,18,22 43:3,7
   43:11,15,19
**list**
2:7,8 28:9,18,21
   29:12,18,18,23
   30:5,5
**lists**
25:24 29:14,16
**litigation**
13:20 14:11,15
   15:3

**LLP**
3:5
**Loeser**
30:1,2
**long**
7:17,25 10:6
**longer**
24:2 35:21
**look**
13:13,16,23 14:7
   21:12 23:15 33:6
   36:3 38:22
**looked**
9:13 31:10
**looking**
21:18,22 25:3
   26:17 35:10
**L-O-E-S-E-R**
30:3

**M**

**maintain**
16:19 17:6
**maintenance**
35:13 36:4,15
**major**
35:5
**management**
7:13,16 8:4 9:17
   11:23
**manager**
9:11 10:18
**manner**
9:23
**March**
10:16,17 12:7
   23:14 25:12,22
   37:21 38:3,4
**marked**
15:17 19:19 23:5,8
   24:16 27:25 28:24
   33:2,5 36:7
**Marshall**
18:10,15,17,24

19:3,17 20:15,22
20:23 23:11 25:4
30:24 31:2 32:19
33:19 34:1 35:17
35:18 37:20 38:2
38:19
**Marshall's**
30:21
**Marsi**
1:25 39:20
**Mary**
29:25 30:9
**matter**
40:12 41:6 42:7
**mattered**
20:17
**mean**
8:16 14:12,16 15:2
17:3 20:8 24:1
29:9 36:23,25
38:9
**means**
14:21,24 29:13
**mechanic**
35:13 36:4,15
**meet**
5:24 6:15 17:19,20
18:10 19:6,22,25
20:2,8 22:6 28:22
31:8
**members**
33:20 37:5,12
38:14
**mentioned**
8:24 9:2
**met**
17:21,23 18:3,8,24
20:23
**Michael**
30:1,2
**Mike**
30:11
**mine**
16:1

**minimal**
28:22
**minimally**
28:19
**Minor**
7:6
**minute**
33:6
**minutes**
6:16
**Mitchell**
1:17 3:16
**Mm-hmm**
21:25
**modern**
9:16
**months**
30:23
**Morehouse**
7:14
**morning**
4:2
**mother**
34:7,11 35:8
**moving**
23:2
**multiple**
34:16

**N**

**N**
3:12
**name**
5:7 42:10
**named**
12:3
**Natasha**
21:6
**naval**
7:11,12
**necessarily**
15:3 26:11
**need**
5:2,5 19:25 20:2

**never**
18:24 19:3,11
20:23 37:4
**new**
11:12
**Newman**
37:12,12,15
**Nicole**
12:3,10 33:15,15
**nods**
25:19
**nonclassified**
22:13,16 25:2,9
26:4 27:17
**nondiscrimination**
9:21
**normally**
16:16 29:16
**Northern**
1:1 4:8 40:1
**Notary**
41:18
**notice**
4:10 5:6 36:21
**number**
5:12

**O**

**Object**
25:7 37:23
**objections**
4:12
**OCGA**
3:22
**offer**
38:18
**office**
11:23,24 12:22
16:3,7,11
**officer**
7:11,24 8:4,9
**Okay**
27:19
**once**

16:4,11
**one-page**
29:11
**open**
22:7 26:20,22
**opened**
18:19
**operate**
9:18
**operated**
10:11
**opinion**
18:22
**opportunities**
26:20
**opportunity**
8:14,21 9:21,24
15:12,24 17:18
21:5 33:13
**organization**
27:2
**organizational**
11:15,16
**original**
42:12
**outcome**
39:14
**outside**
26:9,23
**oversight**
11:13

**P**

**page**
2:2,17 21:19,22,23
21:24 33:17 40:14
41:6 42:14,18,22
43:3,7,11,15,19
**paid**
24:7
**panel**
20:12,16 22:6 37:2
37:2,4,10,12
38:14,14,19

**panel's**
22:4
**paragraph**
33:18 36:21
**part**
19:8 32:11 37:10
**parties**
4:10 8:24 19:23
40:21
**party**
39:13
**pay**
23:23 24:8
**Peachtree**
3:7
**pending**
4:7
**pension**
11:18
**people**
9:1 12:4,7 20:12
23:23 24:1 27:11
28:15
**perform**
27:14 28:16,23
**performed**
36:19
**period**
6:17 27:8,21,22
35:12
**permanent**
24:14 25:5
**permanently**
37:20
**person**
18:11 26:5 30:7
**personally**
22:2 24:11 41:4
**perspective**
9:16
**place**
14:4,4 20:16 40:13
41:6
**Plaintiff**

1:4 3:2 40:4
**Plaintiff's**
15:17 19:19 20:25
23:5,8 24:16
27:25 28:3,24
29:2 33:2,6 36:7
36:10,13
**plan**
9:19,20 10:2,6,7,12
**planning**
16:22 30:10 31:18
35:1
**Plaza**
3:6
**please**
5:7 30:22
**plow**
5:6
**point**
10:1
**policies**
25:4
**policy**
9:22 23:23 25:24
26:19
**Porter**
2:9 33:15
**position**
2:6 6:22,23,24 7:22
7:25 8:3,4,4 9:11
11:12 15:8 18:11
18:16,18,19,20,22
18:25 19:4,12
20:15 22:7,13,16
23:25 24:11,12,13
25:2,6,8,16 26:4,6
26:8,9 28:11,13
28:15,20,22 30:19
31:22,25 32:6
33:13,21 34:1,8
35:25 37:14,20,22
38:3,19
**positions**
22:22 26:20 27:6

27:16
**post**
27:4
**posted**
26:21 28:11,13
**potential**
13:16
**practice**
19:22
**preceding**
40:12
**predate**
25:17,18
**predecessor**
6:23
**premises**
13:1
**preparation**
5:25
**prepare**
5:14
**preselected**
18:15 20:15
**present**
3:20,24
**Pretty**
36:18
**previously**
12:17
**prior**
10:17 12:8 15:15
18:25 31:25
**privilege**
4:13
**probably**
13:12
**Procedure**
4:11
**procedures**
17:16
**proceeding**
39:11
**process**
15:23 16:1,11 17:7

21:10 31:14
**processes**
17:16
**produced**
5:17 14:10,14 17:1
17:3
**professional**
7:9,10
**program**
7:15 9:16 11:14
**promote**
15:7
**promoted**
8:2 10:14 11:4 15:9
22:12 30:24,24
**promotes**
23:10
**promotion**
11:6 12:8 22:3
25:25 30:21 31:5
32:20
**promotional**
23:24 24:11 26:9
26:20
**provide**
8:20 9:6 13:2,21
17:9,17 20:5
**provided**
9:23 13:5,22,24
14:21,21 15:1,4
16:22 17:4,5,10
19:13 20:6
**Public**
12:16 41:18
**pulls**
14:1
**purposes**
4:10
**pursuant**
3:22 4:9
**pursuit**
9:14
**p.m**
1:14 38:24

**Q**
**qualifications**
21:21 28:23
**qualified**
26:7,13,14 27:12
28:16,19 34:7,13
34:15
**question**
14:13 20:8 26:18
**questions**
17:13,14 39:8

**R**
**race**
15:10 30:18
**rank**
7:12
**Ransom**
10:19
**rate**
24:8
**rated**
33:19
**Raul**
37:12
**read**
19:15,15 37:6
40:21 42:6,7
**readily**
32:16
**real**
29:17
**reason**
38:15 42:16,20,24
43:5,9,13,17,21
**reasonable**
35:4
**reasonably**
9:12
**reasons**
42:9
**recall**
13:8 15:13,14
17:21 18:12 25:13

29:9,10 31:1 32:7
32:14
**receives**
16:11
**recognize**
20:25 23:9 29:2,4,7
**record**
5:8 39:10 42:9
**records**
13:22,22
**reduced**
39:8 40:17
**reference**
34:21
**references**
31:21 34:19
**referral**
28:9 29:17 30:5
**Referred**
2:7
**regarding**
21:20 38:5
**register**
26:2,3,5,11,12 27:7
27:8,12,20,23
**regular**
24:8
**related**
14:11,15,17 17:22
30:18 31:4
**relative**
19:4 39:12
**relevant**
19:12 20:3
**remembered**
6:21
**remodeling**
36:20
**repairing**
36:20
**Repeat**
14:13
**rephrase**
6:5

replaced
12:19
report
6:11,13 10:18,25
   12:4,14
reporter
3:24 5:2 40:17 42:5
reporting
12:8
request
13:25 21:19 38:11
   42:8
requested
14:20,22,23,25
   15:2,3,4 38:13
   40:16
required
24:12 27:7,20
requirement
26:4
reserved
38:25
resolution
8:13,15
resources
26:7,11 27:14,24
   28:11,14,19
respect
28:12 31:8,22
   32:19
respond
16:15,16 17:13
responded
31:7
response
2:4 17:10,12,15,17
   21:19
responses
8:20 16:23,24
responsibilities
11:19 12:1 28:12
responsibility
8:11 11:21
responsible

28:14 30:7
rest
18:21
retaliation
31:4
retire
10:23
retired
7:11 10:22 30:16
review
17:12 22:2,5
reviewed
5:16 13:14 22:4,8
rgodfrey@atlant...
3:19
right
5:6 15:4 20:9,10,11
   20:22,24 21:25
   22:24 23:1 30:6,8
   38:8,9
rights
23:3
ROBERT
3:12
role
33:21
Ronnie
18:10 23:10 30:21
   32:19
ROTC
7:15
Rules
4:11

_____ S _____
Sandra
30:24
satisfied
17:15 37:8
saved
17:6
saying
28:19
says

14:18 23:16,21
   25:1,8,22 28:22
   29:12 36:21
school
7:14
schools
7:9
scope
12:1
Sears
21:6
second
21:19,23 29:15,20
   29:22 30:19 32:9
   32:12 36:21
secretary
13:24
section
23:15
see
13:23 23:18 26:16
   32:16 38:15
seen
15:20 24:19,23
   28:3 29:8,10 33:8
   36:10
selected
18:11 24:12 26:5
   28:15 37:14
self-employment
31:14 34:10,17,20
sends
14:1
sent
8:17 16:21
September
39:15
seriously
34:6
served
32:4
service
22:25 25:9 26:1
serving

33:21
set
9:14 40:13 41:6
sheet
16:10 42:1,10
sheets
38:13
Sherri
11:1,5
show
26:16
shows
26:13
sign
22:15 24:12 40:21
Signature
38:25 43:24
signed
23:14 25:11 42:10
significant
32:15 35:12
significantly
35:21
six
4:23,24
skill
36:19
Sociology
7:6
Solomon
30:9
somebody
35:6
sorry
25:21,21 28:5
   34:22 37:24
speak
22:9 37:7
specific
27:8 29:11
specifically
21:18
specification
2:11 36:14

specified
27:22
start
7:22
started
7:22 8:6
state
5:7 39:3 41:2
stated
39:7
statement
3:23 6:5
states
1:1 8:16 33:24 40:1
   41:5
stating
33:13
status
22:22
statutes
9:25
Street
1:17 3:7,16
structures
36:20
submission
21:4 22:8
submitted
3:23 22:3 38:16
SUBSCRIBED
41:13
subsequent
30:21
sufficient
13:2 27:2
suggested
9:3
Suite
1:19
superior
35:16
supervisor
15:8 18:17 23:22
   25:5,15 30:19

James "Tommy" Green v. City of Atlanta, et al.   1:08-CV-03814-ODE-RGV
Alfred Elder

August 24, 2010
Page 52

```
    31:5                things              34:12               4:6                 writing
sure                7:16 30:7           turn                VII                 16:16
    6:21            think               33:17               8:12 32:18          written
surprise                12:6 31:15,19   Turnaround          violated                3:23 33:18
    37:11               34:11               2:5                 32:18            wrote
SW                  thought             Twenty-five         violation               10:7 36:16
    1:17 3:16           15:7 35:15 37:13     12:5               17:17            WTINESS
sworn               three               two                 voluntarily             37:24
    4:1,16 41:5,13      20:12 30:23         7:13 12:9 30:23     23:3
system              Tim                     31:18 32:15     vs                  ──── Y ────
    26:10               18:2,4,6         type                    1:5 40:5        yeah
                    time                    22:14                                   6:18 36:18
──── T ────             6:17 17:25 18:6,13  types           ──── W ────         year
take                    18:18 24:4 27:8      7:16           waive                   10:16,17 13:11
    4:5 5:3 33:6        27:21,22 29:10,23  typewriting          4:12            years
taken                   30:12 31:14 35:12       39:9        wanted                  7:13,15,19 9:15
    4:9 7:10,13 39:7    37:17 38:6 40:13  typewritten           6:20                10:8 13:12 31:18
    40:12,16 41:5       41:6                 40:18          wasn't                  34:10,16,22 35:19
    42:7            times                                       14:7 34:7            35:21
talent                  4:22,24 16:5     ──── U ────        went
    27:2            Timothy             unclassified            16:8           ──── Z ────
talk                    1:7 4:7 40:7         2:6 24:13 28:10,13 West            zoning
    6:6 32:8 37:1,15  title                  28:21 38:2        3:7 7:3             31:16,17 34:25
talked                  7:20 8:12 9:11   understand        we're                   35:5
    32:10 37:3,8        10:20 12:17 32:18     5:1 18:13        4:4
talking                 40:14 41:6       understanding     we've               ──── # ────
    22:14 26:15 27:18  today                 13:3 24:15        12:1            #1
    35:17               4:3 5:15,25      unit               Witness                2:3
taught              told                    11:15,16,17,22     4:1 25:19       #2
    7:14               18:25 20:22 37:13  United            witnesses              2:4
telephone           Tommy                   1:1 8:16 40:1      17:19,20,21     #3
    5:12               1:3 4:6 5:20 40:3  units             work                   2:5
tell                top                     11:13              8:18 12:24 24:2 #4
    14:25 37:15        15:16 30:6        unrelated              27:7,20 28:10      2:6
temporarily         Tower                   35:25              32:23           #5
    23:16,21,24 24:10  3:15              U.S               worked                 2:7
tend                transcript             8:13 15:11,24      35:12 36:19      #6
    5:6                39:7,9 40:22 41:5,7    17:18 21:4     working                2:8
terms                  42:6,12                              24:1 31:15 34:6    #7
    34:12           treated              ──── V ────            35:8               2:9
testified               9:22            valid              works               #8
    4:17            true                    8:20,23           5:1 12:16            2:11
Thank                   27:16 39:10 41:6  verifiable       wouldn't
    4:2 6:25 38:23  truthful                35:15              16:10 20:19 38:20 ──── 0 ────
                                        versus                                  07
```

James "Tommy" Green v. City of Atlanta, et al.   1:08-CV-03814-ODE-RGV
Alfred Elder
August 24, 2010
Page 53

23:13,14 25:9,12
25:22,23

---
**1**
**1:08-CV-03814-...**
1:6 40:6
**1:12**
1:14
**10**
37:21
**1100**
3:6
**115**
5:11
**1180**
3:7
**12th**
25:22 38:4
**13**
34:22
**15**
2:3 6:16
**15-14-37**
3:22
**150**
13:11
**18**
13:12 22:23
**19**
2:4 22:20,20,25
**1972**
10:5
**1992**
8:7 10:5 31:16
**1997**
10:10
**1998**
10:9

---
**2**
**2**
20:25
**2nd**
23:14 25:12 37:21
38:3

**2:11**
38:24
**20**
9:15
**20-something**
34:9
**2001**
31:16
**2002**
8:1,2
**2007**
15:8 29:23 30:12
**2009**
10:24 31:6
**2010**
1:13 39:15 41:14
42:3
**23**
2:5
**24**
1:13 2:6 42:3
**25**
12:6
**26th**
23:17
**27**
2:7 25:9
**27th**
23:13 25:23
**28**
2:8

---
**3**
**3**
23:9
**3rd**
39:15
**30**
24:2,5,6,7
**30303-3520**
3:17
**30309**
3:8
**30342**

**5:11**
**33**
2:9
**330-6655**
3:18
**36**
2:11

---
**4**
**4**
2:18
**404**
3:9,18
**404-330-6640**
5:13
**4100**
1:19 3:15

---
**5**
**5**
28:4

---
**6**
**6**
29:3
**68**
1:17 3:16

---
**7**
**7**
33:6
**7/7/08**
2:10
**781-1100**
3:9

---
**8**
**8**
10:10 36:11,13
**80**
13:10
**800**
13:13

---
**9**

**93**
10:7

---